## W. D. MILES v. J. OGDEN ARMOUR, Appellant.

### Division Two, February 6, 1912.

1. **DEPOSITION: Failure to Give: By Non-resident Party to Suit: Pleadings Rejected.** Section 6361, R. S. 1909, which provides that if a party to a suit, being duly summoned, refuse to give his deposition his pleading may be rejected, applies not only to residents, but to a defendant who is a non-resident and who has been duly notified by a notary of his own State to give his deposition there.

2. **TWO PENALTIES: One Impossible or Illegal.** When two penalties are provided for an act, an offender cannot escape by showing that one of the penalties is illegal or impossible.

3. **DEPOSITIONS: Justification of Statutes by Court.** The court refuses to enter upon a justification of the Missouri statutes as to depositions.

4. **CONSTITUTIONAL LAW: Depositions: Failure to Give: By Non-resident Party to Suit: Sec. 6361, R. S. 1909.** Section 6361, R. S. 1909, requiring a party to a suit to give his deposition and authorizing the court to reject his pleading for refusal so to do, does not violate the fourteenth amendment, nor does it deny to said party due process of law.

Appeal from Jackson Circuit Court.—*Hon. Hermann Brumback*, Judge.

AFFIRMED.

*A. R. Urion* and *Frank Hagerman* for appellant.

(1) The action of the court below was not justified by the statute. (a) While the lower court issued a commission, it was directed to a notary public in Illinois. His power to act or to compel the attendance of, or the giving of testimony by a witness was wholly dependent upon the law of that State. Rapalje on Contempt, sec. 7; Wharton on Conflict of Laws, sec. 723; Martin v. People, 77 Ill. App. 311; In re Bushnell, 44 N. Y. Supp. 257, 19 Misc. 307; Spanish Consul's Petition, 1 Ben. 225, 22 Fed. Cas. 854. No proof was offered of any Illinois statute upon the subject, and it has been there explicitly decided that neither the notary nor court in Illinois can compel a witness to attend or testify before him. Martin v. People, 77 Ill. App. 315; Puterbaugh v. People, 131 Ill. 199. (b) Here the court below issued no order to appellant. He was not asked to appear before it. The order was from a notary in Illinois and under the rule there prevailing, whether or not he there appeared was solely a matter of voluntary action. Hawes on Jurisdiction, sec. 223; Rapalje on Contempt, sec. 13. As the defendant was at the time without the State and beyond the reach of process of the court below, that court had therefore neither power nor jurisdiction to deal with him. In re Allis, 44 Fed. 216; Larimore v. Bobb, 114 Mo. 446. The reason for that rule is that no court can be empowered to act in matters beyond its territorial jurisdiction. (c) The statute (Sec. 6361), when properly construed, should not, therefore, be extended to the refusal to testify in another State. Its language is that if he refuses to testify then "besides being punished himself as for a contempt," his answer may be stricken out. Unless, therefore, he could have been by the court below pun-

ished as for a contempt, his answer could not be stricken out. The statute did not justify the action of the court below. That a Missouri statute was not intended to empower a Missouri court to deal with, or punish, for an act done in Illinois, is apparent from a slight review of the authorities. 13 Am. & Eng. Ency. Law (2 Ed.), 1051, 1054; 22 Ibid. 1319; Hilton v. Guyot, 159 U. S. 163; Cooley on Constitutional Limitations (6 Ed.), 149; Sedgwick on the Const. of Stat. and Const. Law (2 Ed.), 56, 57; Story on Conflict of Laws (7 Ed.), secs. 7, 8. (d) Moreover, if the statute could be applied, it was an abuse of discretion to strike out the answer and render judgment. (2) The statute, if applicable, fails to accord to defendant due process of law, as guaranteed by the Fourteenth Amendment to the Constitution of the United States. Hovey v. Elliott, 167 U. S. 409; McVeigh v. United States, 11 Wall. 259; Calder v. Bull, 3 Dall. 388; Bonaker v. Evans, 16 Ad. & E. 170; Capel v. Child, 2 Cromp. & J. 574. This doctrine has been frequently reaffirmed and applied. Golpin v. Page, 18 Wall. 350; Bennett v. Bennett, 208 U. S. 505; Fayerweather v. Ritch, 88 Fed. 719; The Fred M. Lawrence, 94 Fed. 1017, 1018; In re Parvine, 96 Fed. 197; In re Rosser, 101 Fed. 567; Mercantile Nat. Bank v. Hubbard, 105 Fed. 813; In re Mayer, 108 Fed. 599; Hendryx v. Perkins, 114 Fed. 825; Young, etc. Co. v. Brande, 162 Fed. 664; Sibley v. Sibley, 76 N. Y. App. 132, 78 N. Y. Supp. 745; McClatchy v. Superior Court, 119 Cal. 413, 51 Pac. 699; Foley v. Foley, 120 Cal. 33; Younger v. Superior Court, 136 Cal. 682, 69 Pac. Rep. 486; Greig v. Ware, 25 Colo. 184; State v. Clancy, 24 Mont. 359. The notary had no power to force him to testify, nor to protect him from an inquisitorial examination, never asked him a question or sought to coerce his attendance.

*Warner, Dean, McLeod & Timmonds* for respondent.

(1) In the following cases pleadings were stricken out for failure to appear and give testimony on behalf of an adversary, and the action of the trial courts in so doing upheld: Larimore v. Bobb, 114 Mo. 446; Snyder v. Raab, 40 Mo. 166; Haskell v. Sullivan, 31 Mo. 435; Carr v. Dawes, 46 Mo. App. 351. (2) It nowhere appears, nor has there been any attempt to make it appear, that defendant had any good cause or excuse for refusing to testify; nor does it anywhere appear, nor has there been any attempt to make it appear that he had any meritorious defense to plaintiff's cause of action. (3) The statute in question applies to this case, notwithstanding defendant resided in Illinois and it was sought to take his deposition in that State. (a) It is true there was no proof that under the laws of Illinois a notary public may compel the appearance of a witness; or that he could not do so. But, for the purposes of this case, it is wholly immaterial what may be the laws of Illinois in that regard. The deposition was not to be taken under the laws of that State, nor for use in the courts of that State, but under commission duly issued under the laws of this State, for use in a case pending in a circuit court of this State. The commissioner did not undertake to attach the defendant nor to punish him for contempt; hence, it is wholly immaterial whether he did or did not have power to do so. (b) Defendant's next contention is, that as he was beyond the territorial jurisdiction of the court, it had "neither power nor jurisdiction to deal with him." If it be conceded that the court had no power to "deal with him,"—that it had no power to fine or imprison him, yet it had jurisdiction of the case, and had power to deal with it. Plaintiff had a right—a legal, substantial, valuable right—to procure and have for use in the suit, the

defendant's testimony. Defendant had no legal or moral right to deprive him thereof. It was not only within the power of the court, but it was its duty, to see that defendant did not unjustly or wrongfully deprive him of that right. (c) The next contention is that the statute does not extend to a refusal to testify in another State. This contention overlooks the fact that our laws guarantee to any party to a suit pending in our courts, the right to have and use the testimony of his adversary, wherever he may be. And, recognizing that an adversary may sometimes, through stubbornness or meanness or personal ill-will, or for some other unjust and inexcusable reason, deprive the other party to the suit of his just and lawful right in that regard, our laws also provide a means for the protection of that other party; and, in applying and enforcing that statutory right, the court is dealing with a case over which it has jurisdiction. If this were not the law, how easy it would be in some cases, for a party to a suit to use our courts of justice as instruments of wrong-doing. In the consideration of this point, it must be remembered that defendant was in court. (d) Defendant's next contention is that if the statute can be applied in this case, it was an abuse of discretion to strike out the answer and render judgment. As hereinbefore stated, it does not appear that defendant had, or pretended to have, any good cause or excuse for refusing to testify, nor was there any showing nor any claim that he had any meritorious defense to plaintiff's cause of action. If there had been any such claim or showing, the action of the court might have been different. Not only was there no showing or claim of meritorious defense, but, before judgment, "plaintiff introduced evidence tending to prove all the allegations of his petition." See the second point in this brief. But defendant suggests that there was no showing that the deposition was to be taken for use, and that he was not given

permission to appear and testify under proper protection. There certainly can be no presumption that plaintiff was not acting in the utmost good faith; and it is perfectly apparent that defendant must have been possessed of actual knowledge touching the alleged contract sued on, as he was party thereto. Touching defendant's suggestion that he was not given permission to appear and testify under proper protection, we suggest that it does not appear that he was in need of any protection, nor is there any claim or showing that he was willing "to appear and testify under proper protection," or under any circumstances or conditions. (3) Defendant was not deprived of his property without due process of law. The case of Hovey v. Elliott, 167 U. S. 409, is easily distinguishable from this. If defendant had any meritorious defense, or if he had any good reason to believe that a new trial would have resulted differently, or been of any benefit to him, it was his duty to make some showing or claim to that effect. Haskell v. Sullivan, 31 Mo. 435; Carr v. Dawes, 46 Mo. App. 351. See, also, Packing Co. v. Arkansas, 212 U. S. 322; Mayer v. Peabody, 212 U. S. 78; 22 Am. & Eng. Ency. Law, 1257; Kirby v. Tallmage, 160 U. S. 379; Pac. S. S. Co. v. Bancroft-Whitney, 94 Fed. 198; Brent v. Lewis, 88 Mo. 462; Pomroy v. Benton, 77 Mo. 87; Munford v. Wilson, 19 Mo. 669; Ecton v. Ins. Co., 32 Mo. App. 61; Brake Co. v. Mfg. Co., 19 Fed. 520; Baldwin v. Whitecomb, 71 Mo. 658; Mabary v. McClung, 74 Mo. 591; Conn. Ins. Co. v. Smith, 117 Mo. 261; Henderson v. Henderson, 55 Mo. 534; Cass Co. v. Greene, 66 Mo. 498; Leeper v. Bates, 85 Mo. 224; 16 Am. & Eng. Ency. Law, 1090. (4) The statute is not unconstitutional. The statute in question has been in force since the revision of 1835—more than seventy-five years. It has many times been resorted to by litigants and enforced by trial courts with the express approval of the Supreme Court and of the Courts of

Appeals of this State. In view of the universal accept-
ance and acquiescence of the bar and the courts of this
State in its constitutionality, it ought not, at this late
day, when questioned for the first time by one who
shows no just excuse for depriving his adversary of his
testimony, and who shows no meritorious defense, to
be held unconstitutional. Rhodes v. Bell, 230 Mo. 138;
Venable v. Railroad, 112 Mo. 103; State ex rel. v.
Laughlin, 75 Mo. 147; Shipp v. Clinger, 54 Mo. 239;
Standard Oil Case, 194 Mo. 124.

ROY, C.—Plaintiff sued defendant by attachment
in the Jackson Circuit Court on January 10, 1907, for
$1816.28, balance claimed to be due on contract, with
interest; and property of the defendant located in
Kansas City was attached, the defendant being a non-
resident.

On March 25, 1907, plaintiff sued out a commis-
sion to take depositions in the State of Illinois, and
notice was duly given to defendant, and he was sum-
moned on March 29, 1907, to appear before the notary
on April 2, 1907, to give his deposition. At the time
and place given in the notice and summons, both par-
ties appeared by counsel, and defendant's counsel
stated that his client refused to testify or give his
deposition in the case. Plaintiff's counsel thereupon
informed defendant's counsel of the existence of our
statute requiring a party to give his deposition, and
on refusal, authorizing the court to reject his plead-
ing. After which defendant's counsel again stated
that his client would not give his deposition.

On April 12, 1907, defendant, by Frank Hager-
man, his attorney, entered his appearance and filed
an answer, which was a general denial. By stipulation
the attached property was released.

At the October term, 1907, the plaintiff presented
his motion to strike out defendant's answer on account

of such refusal, which motion set out the facts neces-
sary to a hearing thereof.    The defendant presented
his suggestions in opposition to said motion, stating
that the statute under which the motion was filed is in
violation of the Fourteenth Amendment to the Federal
Constitution, and of sections 4, 10 and 30 of article 2
of the Constitution of Missouri, and that the statute
has the effect of depriving defendant of his property
without due process of law.

On October 26, 1907, the trial court sustained
plaintiff's motion, denied defendant's right to be fur-
ther heard, and, having heard plaintiff's evidence in
support of his petition, entered judgment for plaintiff
for the amount demanded and interest.    Defendant
has appealed.

I.    It is contended on the part of appellant that
the laws of the State, *ex proprio vigore,* have no force
beyond the State boundary, and that, as no statute
of Illinois is shown giving power to the officer in Illi-
nois to summon defendant and compel him to testify,
the whole proceeding before the notary was, so to
speak, *coram non judice* and void.

While the general doctrine of the limitation of
the force of laws to the territory of the sovereignty
may be conceded, yet within the State the laws and
the courts often act upon and determine rights based
upon acts and conditions done or existing outside the
State.

Thus it is said: ''Notwithstanding the rigor with
which the English courts have applied the *lex rei sitae*
to immovables, the court of chancery has claimed the
right to compel parties, subject to its jurisdiction, to
take specific action with regard to foreign real estate.
Thus, an injunction has been granted to restrain the
prosecution of claims for such foreign realty; specific
performance of articles of agreement for sale of for-
eign realty has been enforced; and reconveyances
and releases ordered of estates fraudulently ac-

quired in foreign lands. On the other hand, to quote from Mr. Westlake, 'the claim, to affect foreign lands . . . must be strictly limited to those cases in which the relief decreed can be entirely obtained through the party's personal obedience; if it went beyond that, the assumption would not only be presumptuous but ineffectual.' " [1 Wharton's Conf. Laws, sec. 288.]

It is also said, "When the personal property of a non-resident is within the State it is subject to its laws, and may be seized, attached, forfeited, as a thing guilty or hostile, the same as though the property of a citizen, and subject to the same rules and liabilities. The service of process or an order of court, made outside the boundary of a State, can have no more force than knowledge brought to a party in any other manner. [Brown on Jurisdiction, sec. 4.]

Section 6389, Revised Statutes 1909, says: "The commission shall authorize such officer to cause to come before him such person or persons as shall be named to him by the party suing for the same, and shall command such officer to examine such person touching his knowledge of anything relating to the matter in controversy," etc.

Concede that the process for the witness called for in that section is no more than a notice as stated by Brown, yet it is that very notice which the statute has in view when it says, section 6361, Revised Statutes 1909, "If a party, on being duly summoned, refuse to attend and testify, either in court or before any person authorized to take his deposition," etc. There is nothing to hinder the State from requiring from a non-resident, as well as from a resident, as a condition to his being heard in court, that he shall, on proper notice, give his deposition either in the State or out of it. We do not need the assistance of the laws or courts of Illinois in the enforcement of that statute.

The penalty which our statute provides is, not that he shall be fined or imprisoned by the Illinois notary, but that he shall be punished by having his pleading stricken out by the trial court.

The point is made that there had been no previous order of court requiring the defendant to testify. True there was no order of court, but there was a statute, and at the time and place when the deposition should have been given, counsel for plaintiff notified defendant's Illinois counsel of such statute and of the consequences of such refusal.

II.   The statute says *"besides being punished himself for a contempt,* his petition, answer or reply may be rejected,'' etc.

Even if it be conceded, as it is not, that the court cannot ''punish for a contempt'' in such case, still such fact would not destroy the power of the court to strike out the pleading. If two penalties be provided for an act, the offender cannot wholly escape by showing that one of them is illegal or impossible. No authority for such a result has been shown us, and we know of none.

III.   Complaint is also made that the Illinois officer had no power to protect defendant from an inquisitorial examination and that no limit was put upon the inquiry to be made. We will not enter upon an attempt to justify the wisdom of our statutes as to depositions. That has already been sufficiently done in Tyson v. Sav. & Loan Assn., 156 Mo. 588.

IV.   The statute does not violate the Fourteenth Amendment to the Constitution of the United States, nor does it deny the defendant due process of law. The case of Hovey v. Elliott, 167 U. S. 409, is cited by appellant. That was a case where a party was ordered to pay over a fund, failing in which his answer was stricken from the files and a decree entered

against him. It was held not to be due process of law. It must be admitted that the language quoted by counsel from the opinion of Justice (now Chief Justice) WHITE in that case gives color to their contention. It is as follows: "A more fundamental question yet remains to be determined, that is, whether a court possessing plenary power to punish for contempt, unlimited by statute, has the right to summon a defendant to answer, and then after obtaining jurisdiction by the summons, refuse to allow the party summoned to answer or strike his answer from the files, suppress the testimony in his favor, and condemn him without consideration thereof and without a hearing, on the theory that he has been guilty of a contempt of court. The mere statement of this proposition would seem, in reason and conscience, to render imperative a negative answer."

That court in Hammond Packing Company v. Arkansas, 212 U. S. 1. c. 351, upheld the court's power to strike out a party's pleading for failure to produce proof when ordered, and distinguished the case then under consideration from Hovey v. Elliott as follows: "In the former due process of law was denied by the refusal to hear. In this the preservation of due process was secured by the presumption that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense. The want of power in the one case and its existence in the other are essential to due process, to preserve in the one and to apply and enforce in the other. In its ultimate conception therefore the power exerted below was like the authority to default or to take a bill for confessed because of a failure to answer, based upon a presumption that the material facts alleged or pleaded were admitted by not answering, and might well also be illustrated by reference to many other presumptions attached by the law to the failure of a

party to a cause to specially set up or assert his supposed rights in the mode prescribed by law.''

That court then proceeds to show that ever since the judiciary act of 1789 the Federal courts have proceeded under a section of that act giving them authority to require the production of books and papers in the possession of a party, and of giving judgment against such party on failure to comply, and that the validity of that act was recognized in Thompson v. Selden, 20 How. 194, and Boyd v. United States, 116 U. S. 616.

Appellant does not claim to have acted in ignorance of our statute. He admits that he refused to give his deposition and gave no valid reason for such refusal. He did not, at any time thereafter, offer to purge himself of the contempt by giving his deposition. He is in the attitude of complaining that he was refused a hearing while refusing to speak.

The judgment is affirmed. *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All concur.